POSTUM CEREAL CO., Limited, v. AMERICAN HEALTH FOOD CO.

(Circuit Court, E. D. Wisconsin. July 27, 1901.)

1. TRADE-MARKS—INFRINGEMENT.

The trade-mark "Grape-Nuts," under which name a cereal food is sold, is not infringed by the name "Grain-Hearts," under which a similar food is sold; the latter name not being so displayed and associated on the package as to make it substantially identical with the former trade-mark.

2. UNFAIR· COMPETITION IN TRADE.

The package. in which complainant sells a cereal food under the name "Grape-Nuts" is not so imitated by defendant in the sale of a similar food under the name "Grain-Hearts" as to constitute unfair competition in trade, though there is similitude in the terms in which the foods and their qualities are described; the wrappers being of a different shade of yellow, complainant's trade-mark appearing on the package in a single place in a black band and yellow letters, and in a straight line, while defendant's appears in four places, in a diagonal band, in red, white, and blue; with a red heart.

In Equity. On final hearing.

J. G. Elliott and G. W. Mechem, for complainant.
E. H. Bottum and F. H. Remington, for defendant.

SEAMAN, District Judge. The complainant has made and sold since January, 1898, a cereal food under the arbitrary name of "Grape-Nuts," which it has advertised extensively, and the sales are

large and increasing. Subsequently the defendant entered the market with a similar product, which it named "Grain-Hearts," and advertised as such. Concerning the technical trade-mark in the name "Grape-Nuts," it is plain that there is no infringement per se in employing the name "Grain-Hearts" for the defendant's product, as the names are dissimilar in sound, appearance, and suggestion; and violation of the trade-mark rights does not appear, unless the new name is so displayed and associated as to make it substantially identical with the complainant's trade-mark, so that it is not distinguishable by the general purchaser. The issue in that feature is liable to be confused with the independent question of unfair competition, as indicated by the treatment of evidence of simulation in some of the cases wherein allegations of trade-mark infringement were alone involved. But this bill alleges as well unfair competition in trade, and the evidence may best be considered in that aspect, primarily at least, as the one most favorable to the complainant for the consideration of its broad claims of imitation, which include not only external appearance of label and package, but are also asserted in the size of carton and characteristics of the contents, in the printed matter as to qualities and ingredients, and in methods of advertising. Premising that no question is presented of patent right or copy right, the complainant possesses no monopoly in the ingredients or properties of its food product, nor in its ideas or methods of business; and, aside from its trade-mark rights, the field was equally open to the defendant to follow in the same lines, subject only to the well-settled and salutary requirement that the dress and appearance of the complainant's package, as prepared for the market, must not be so imitated by the defendant that the production of the latter was calculated to deceive the public and be palmed off as the complainant's production. The right of action rests alone on fraudulent simulation of the features of the package which are the exclusive possession of the complainant, and not on any following up of its ideas or trade in other respects. Is such simulation presented by the exhibits and testimony in this case? When the complainant entered the field it was occupied by numerous cereal food preparations put up in cartons, generally speaking, of like material, form, and capacity,—the predominant color of the package varying, but yellow in many instances, if not usually,—with labels setting forth the character and properties of the food, and usually bearing a trade-mark, with a name for the product, either suggestive or fanciful. Of course, these general characteristics were alike open to the defendant's use, and the room for acquiring exclusive rights, in so far as involved in this controversy, was narrowed to the trade-mark and such features of the label as made it plainly distinctive from its predecessors. No actual infringement of the complainant's trade-name appearing in the adoption of the name "Grain-Hearts," the question of unlawful simulation in the makeup of the defendant's label and package must be solved by inspection of those in controversy,—ascertaining their special characteristics respectively when viewed in association with those in prior use, and such aid as may be derived from the circum-

stances and the testimony of traders. As both labels relate legitimately to the same ingredients, properties, and trade, the distinctions to be observed are necessarily limited, and many of the contentions on behalf of the complainant must be eliminated from consideration. On the other hand, similitude appears in the defendant's label in the terms in which the food and its qualities are described,—indicating at least the use of complainant's as an example,—so that the obligation was imperative to distinguish the production from the prototype, and the inquiry whether distinction was preserved in the substantial features is not free from difficulty. Taking into consideration, however, the features which were common to the class, I am of opinion that the label and package of the defendant are well marked as of independent origin; that the production is clearly disclosed as a rival, and not adapted to be passed off on purchasers as that of the complainant. This rival character is unmistakably differentiated in the appearance of the trade-name, both in the type and in its diagonal blue band, with the distinct and contrasting colors, in red, white, and blue, and the striking feature of a red heart, together constituting the trade-mark of the producer, which is thus displayed prominently in four places upon the package, while that of the complainant appears in a single place in black band and yellow letters, and in a straight line. The effect of this red, white, and blue design gives special distinction to the package when compared with the plain black band and print on the yellow carton of the other. It may be true that the color so referred to as black in the complainant's band has a shade of blue, as asserted on its behalf, but it gives the impression of a decided black, uniform with the printed matter, while the blue of the other trade-mark is unmistakable, in contrast with the black printed matter. Moreover the yellow of the carton in one and the other is noticeably different in the shade; and the printed matter and display lines in the labels differ in details, in arrangement, and in general appearance, so far as can reasonably be required in view of the like subject-matter. The name of the defendant, as producer, distinctly appears on its package, together with its separate location; and the test of comparison, on the whole, fails to show simulation of the complainant's package in such particulars or to such extent that the one is calculated to be taken by purchasers as the production of the other. No testimony is offered which tends to show that customers were thus deceived in fact; and the only witnesses who speak from experience upon the subject are the retail grocers called on the part of the defendant, and they concur in the opinion that no such confusion and deception were likely to arise. The testimony upon one side and the other relating to the origin of the products, respectively, and to the motive of the defendant, is deemed immaterial on the view indicated, and requires no comment.

In conclusion, it clearly appears that the complainant introduced a new form of cooked cereal food, not the earliest cooked product, but one which speedily became popular and attained extensive sale under its name of "Grape-Nuts," a fanciful name which was in no sense descriptive of the product; that this article was well ad-

vertised, at great expense, when the defendant entered the market with its like preparation, called "Grain-Hearts," a name which was also fanciful, but in a general sense descriptive. Neither the product so placed upon the market by the defendant, nor the name selected for it, infringed any rights of the complainant. As presented for sale, the defendant's goods were reasonably distinguished from those of the complainant in the conspicuous trade-mark on labels and packages, in the colors and printed matter thereon, and in general appearance, marking them as a competitor, and not a counterfeit, so that the charge of unfair competition in trade is unfounded. Therefore the bill must be dismissed for want of equity, and it is so ordered.